UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DERRICK VARGO,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW GRAVES et al.,<br><br>    Defendants. | Case No. 3:24-cv-00153<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:   The Honorable William L. Campbell, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

The docket in this action shows that pro se Plaintiff Derrick Vargo has not effected service of process on Defendants United States Attorney for the District of Columbia Matthew Graves or Federal Bureau of Investigation Director Christopher Wray, who are the only defendants named in Vargo's complaint. Vargo also has not responded to the Court's order to show cause (Doc. No. 7) why the Magistrate Judge should extend his deadline to serve Graves and Wray. And Vargo has not responded to Graves and Wray's motion to dismiss this action under Federal Rule of Civil Procedure 4(m) for lack of service of process. (Doc. No. 8.)

For the reasons that follow, the Magistrate Judge will recommend that the Court grant Graves and Wray's motion and dismiss this action without prejudice under Rule 4(m).

**I.    Relevant Background**

Vargo initiated this action on February 9, 2024, by filing a complaint under 42 U.S.C. § 1983 naming Graves and Wray as defendants. (Doc. No. 1.) Vargo alleges that he attended "a rally in Washington, DC[,] on January 6, 2021[,]" and "was peaceful"; "[t]he Government and media have continued to talk about it for over 3 years"; "[t]hey have conducted the largest

investigation in history and have rounded up over a thousand peaceful citizens with no prior criminal record and charged them with felonies"; "[o]n January 6, 2024, 3 years after the fact, Matthew Graves, the United States Attorney, vowed to hunt down thousands of additional peaceful citizens"; and "[t]hey are searching through our bank records, listening to our private conversations, searching our social media, and otherwise surveilling us." (*Id.* at PageID #1, ¶¶ 2–5, 7, 8.) Vargo further alleges that "[t]hey are sending dozens of armed agents with guns and tanks and drones to people's homes in the early morning[,]" "pointing guns at children in their pajamas[,] and throwing smoke grenades into people's homes." (*Id.* at PageID# 2, ¶¶ 10, 11.) Vargo asserts that "[t]hey are chilling [his] right to free speech and free assembly"; "illegally surveilling [him]"; "threatening to use unreasonable force against [him]"; and "treating [him] differently and unequally applying the law against [him] when compared with [Black Lives Matter] people." (*Id.* at PageID# 2–3, ¶¶ 19–22.) Vargo asks the Court to order Wray and Graves "to stand down and not" arrest or prosecute Vargo or "any more January 6ers." (*Id.* at PageID# 2, ¶¶ 13, 14.)

Vargo paid the Court's civil filing fee (Doc. No. 1-1), and the Clerk of Court issued summonses for Graves, Wray, and Henry Leventis, then the U.S. Attorney for the Middle District of Tennessee, at Vargo's request (Doc. No. 3). Vargo filed a proof of service affidavit stating that he "[h]and delivered" the summons addressed to Leventis to the U.S. Attorney's Office for the Middle District of Tennessee on the same day he filed his complaint. (Doc. No. 5, PageID# 17.)

The Court informed Vargo that he "is responsible for effecting service of process on Defendant[s] in accordance with Federal Rule of Civil Procedure 4" and warned him that "[f]ailure to timely complete service of process [would] result in the dismissal of this action" under Rule 4(m). (Doc. No. 6, PageID# 19.) The Court also pointed Vargo to "[a]dditional resources for

pro se litigants" available on the Court's website, "including forms, handbooks, and information sheets[.]" (*Id.*)

On May 22, 2024, the Court found "that Vargo ha[d] not filed proof of service affidavits for Graves or Wray, and neither defendant ha[d] appeared in this action or responded to Vargo's complaint." (Doc. No. 7, PageID# 20.) The Court reiterated Vargo's obligation to serve Graves and Wray in compliance with Rule 4(i); ordered Vargo to show cause by June 11, 2024, why the Magistrate Judge should extend the service deadline instead of recommending that the Court dismiss his claims under Rule 4(m); and warned Vargo that failure to comply with the show-cause order would likely result in a recommendation that the Court dismiss his claims. (Doc. No. 7.) The docket shows that Vargo has not responded to the Court's show-cause order.

On July 15, 2024, Graves and Wray filed a motion to dismiss Vargo's complaint under Rule 4(m) for failure to effect service of process and certified that they served Vargo with a copy of their motion and supporting memorandum of law by mail. (Doc. Nos. 8, 9.) Vargo has not responded to Graves and Wray's motion to dismiss.

**II.     Legal Standard**

"[T]he requirement of proper service of process 'is not some mindless technicality[,]'" *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (quoting *Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987)), nor is it "meant to be a game or obstacle course for plaintiffs[,]" *Ace Am. Ins. Co. v. Meadowlands Dev. Ltd. P'ship*, 140 F. Supp. 3d 450, 455 (E.D. Pa. 2015). Rather, it goes to the very heart of a court's ability to hear a case. "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012); *see also Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (explaining that "[s]ervice is . . . not only a means of 'notifying a defendant of the commencement of an action against him,' but 'a ritual that marks the court's

assertion of jurisdiction over the lawsuit'" (citation omitted)). Where personal jurisdiction is not properly established, a court cannot exercise its authority consistent with due process of law. *See Friedman*, 929 F.2d at 1156–57.

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Court must extend the time for service upon a showing of good cause, and the Court may exercise its discretion to permit late service even where a plaintiff has not shown good cause. *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (first citing Fed. R. Civ. P. 4(m); and then citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). Otherwise, the language of Rule 4(m) mandates dismissal, either on motion or sua sponte. Fed. R. Civ. P. 4(m); *see also Byrd v. Stone*, 94 F.3d 217, 219 & n.3 (6th Cir. 1996). In light of this plain language, it is well established that Rule 4(m) empowers a court to dismiss complaints without prejudice "upon the court's own initiative with notice to the plaintiff." *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1174 (9th Cir. 2002); *see also Friedman*, 929 F.2d at 1155 n.4 (noting that "the issue of ineffective service of process may be raised sua sponte").

The Sixth Circuit has directed district courts to consider seven factors in "deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:"

(1) whether an extension of time would be well beyond the timely service of process;

(2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;

(3) whether the defendant had actual notice of the lawsuit;

(4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;

(5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;

(6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and

(7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Oakland Physicians' Med. Ctr., LLC*, 44 F.4th at 569.

### III. Analysis

More than 250 days have passed since Vargo filed his complaint asserting claims against Graves and Wray. (Doc. No. 1.) The Court has repeatedly informed Vargo that he is responsible for serving process on Graves and Wray in accordance with the Federal Rules of Civil Procedure and warned him that failure to timely effect service will likely result in the dismissal of this action. (Doc. Nos. 6, 7.) The Court also pointed Vargo to resources for pro se litigants (Doc. No. 6), including information about effecting service of process. Despite the Court's warnings, Vargo has not offered any explanation for his failure to effect timely service of process on Graves and Wray. Vargo therefore has not demonstrated good cause for an extension of time to complete service under Rule 4(m).

A further discretionary extension of the service deadline is not appropriate considering the seven relevant factors that the Sixth Circuit articulated in *Oakland Physicians Medical Center, LLC*, 44 F.4th at 568–69. The second and third factors—prejudice to the defendants and actual notice—weigh in favor of granting Vargo a discretionary extension. Graves and Wray have actual notice of this action and there is no indication that they would be unduly prejudiced by an extension of the service deadline. *See id.* at 571 (noting that "examples of prejudice" include "'a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a

5

Case 3:24-cv-00153 Document 10 Filed 10/21/24 Page 5 of 8 PageID #: 33

witness, or the unreliability of memories of long past events'") (quoting *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012)). The events underlying Vargo's claims are relatively recent, as Vargo alleges that the acts in question took place between January 6, 2021, and the present. (Doc. No. 1.)

The first, fifth, sixth, and seventh factors weigh against an extension. A further extension would be well beyond the 90-day time period for service under Rule 4(m), as more than 250 days have passed since Vargo filed his complaint and there do not appear to be any unique equitable factors weighing in favor of an extension. While Vargo's pro se status is one consideration in determining whether the sixth factor weighs in favor of an extension, there is no indication that Vargo made a good faith effort to serve Graves and Wray, even after the Court explained Vargo's responsibility for effecting service of process (Doc. Nos. 6, 7), directed him to resources for pro se litigants, and provided him an opportunity to explain why the Court should extend the time for him to effect service of process rather than dismiss his claims (Doc. No. 7). Moreover, Vargo's failure to respond to Graves and Wray's motion to dismiss indicates that he is not actively pursuing his claims. The Court therefore does not find that Vargo is "deserving of additional latitude to correct defects in service of process" under the circumstances presented here. *Oakland Physicians' Med. Ctr., LLC*, 44 F.4th at 569.

The fourth factor—prejudice to the plaintiff—is effectively neutral because Vargo's claims may not be time-barred if he reasserts them in a new action. Claims brought under § 1983 are subject to "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104); *Jordan v. Blount Cnty.*, 885 F.3d 413, 415 (6th Cir. 2018) (same). "The

District of Columbia's general statute for personal injury actions establishes a three year statute of limitations." *Curtis v. Lanier*, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) (citing D.C. Code § 12-301(8)). However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013). Here, Vargo alleges that, "[o]n January 6, 2024," Graves "vowed to hunt down thousands of additional peaceful citizens" like Vargo who attended the rally and that the Department of Justice and the FBI have continued to investigate, surveil, search, and arrest individuals like Vargo since then. (Doc. No. 1, PageID# 1, ¶ 7.) Because less than a year has passed since January 6, 2024, there is still time for Vargo to reassert his claims in another action.

Because Vargo has not effected service of process on Graves and Wray in compliance with Rule 4 and this Court's orders despite ample time to do so, notice that failure to do so may result in dismissal, and an opportunity to show good cause to excuse his failure, dismissal without prejudice under Rule 4(m) is appropriate.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Graves and Wray's motion to dismiss (Doc. No. 8) be GRANTED and that this action be DISMISSED WITHOUT PREJUDICE under Rule 4(m).

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

7

Case 3:24-cv-00153    Document 10    Filed 10/21/24    Page 7 of 8 PageID #: 35

A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 21st day of October, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge